

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP:CRH/JMH/EHS
F. #2017R00906

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 11, 2021

By ECF

The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Hu Ji, et al.
>        Criminal Docket No. 21-265 (PKC)

Dear Judge Chen:

For the reasons below, and pursuant to Federal Rule of Criminal Procedure 16(d), the government respectfully requests that the Court enter the proposed Protective Order attached to this motion ("the Protective Order"). The Protective Order imposes restrictions on the use and dissemination of materials and information disclosed by the government to the defendants pursuant to the government's obligations under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, and pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The defendants and their counsel have consented to the Protective Order.

I.    Background

    A.    The Charged Conduct

As alleged in the Complaint, ECF No. 1, and the Indictment, ECF No. 54, between September 2016 and November 2019, the defendants currently before the Court—Zheng Congying, Zhu Yong, and Michael McMahon ("the Defendants")—together with others, including officials of the People's Republic of China ("the PRC"), conspired to act as unlawful and unregistered agents of the PRC and conspired to stalk and harass residents of the United States in an effort to coerce them to return to the PRC. See ECF No. 1 at ¶¶ 5-7.

Other defendants charged in the Complaint and Indictment include PRC officials Hu Ji and Li Minjun, and PRC national Zhu Feng. None of these three individuals have been apprehended. They are each believed to be in the PRC.

B.   <u>The Discovery</u>

As part of its investigation, the government has obtained evidence, communications, and records from numerous sources.  Those sources include but are not limited to: voluntary interviews of non-parties; results of physical surveillance and inspections; laboratory reports; records obtained from electronic communications service providers via subpoenas, court orders, and/or search warrants; searches of electronic devices; telephone toll records and historical cell site location information; visa and border crossing records; travel records; financial records and documentation; and other materials.

The volume of material collected in the investigation is substantial and covers many broad categories of materials, as summarized above.  These broad categories of discovery will implicate a number of different interests that should be protected, but three in particular are crucial.

First, the discovery to be provided to the defendants is relevant to the government's ongoing and continuing investigation into the conduct alleged in the Complaint and the Indictment.  As noted above, several of the defendants charged in this matter are not yet apprehended and believed to be in the PRC.  Were they to obtain the government's discovery materials, they would be in a position to frustrate the continuing investigation by, for example, contacting or intimidating witnesses, destroying evidence, and/or continuing their flight from prosecution.  Disclosure of the discovery materials in the absence of the Protective Order could therefore compromise the government's ability to locate, arrest, and prosecute these unapprehended defendants.

Second, the government has a substantial national security interest in protecting the integrity of this investigation where the conduct of a foreign government—the PRC—is at the core of the conduct under investigation.  Were the PRC to learn of the content of the government's discovery, the PRC would similarly have an ability to take steps to frustrate the government's continuing investigation.  The PRC would also gain insight into the government's investigative techniques, and thus be in a position to frustrate future investigations of unsanctioned conduct on U.S. soil such as that alleged in the Complaint and the Indictment.  Disclosure in the absence of the Protective Order could therefore compromise the government's ability to investigate and prosecute these types of cases in the future.

Third, the government's discovery is anticipated to include information tending to identify and provide information about the principal victims of the alleged offense conduct, the Doe family discussed in the Complaint.  Indeed, the core purpose of the alleged schemes was to coerce John Doe #1 to return to the PRC.  If the government's discovery is not protected by the Protective Order, it would tend to expose John Doe #1 and his family to unnecessary and uninvited scrutiny and potential harassment.  Disclosure in the absence of the Protective Order could therefore compromise the government's ability to secure cooperation from similarly situated victims of similar offenses in the future.  Such a result would diminish the government's ability to detect and deter the kind of unsanctioned conduct undertaken on behalf of a foreign power, the PRC, in the future.

II.   Legal Standard

      This Court has the authority under Federal Rule of Criminal Procedure 16(d) to issue a protective order restricting the dissemination of discovery for good cause.  See Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); United States v. Al-Farekh, 956 F.3d 99, 106-07 (2d Cir. 2020) (noting "district courts' power under [Rule 16(d)] to issue protective orders denying or restricting discovery for good cause"); In re: Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect").  "Good cause" as contemplated by Rule 16 includes the protection of information important to the national security, law enforcement and innocent third parties.  See, e.g., United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008) (discussing national security interests); Smith, 985 F. Supp. 2d at 524, 531 (discussing third party and law enforcement interests); Fed. R. Crim. P. 16 advisory committee note (1974) ("Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed."); see also 18 U.S.C. § 3771(a)(1) ("A crime victim has . . . [t]he right to be reasonably protected from the accused.").

      By its own terms, Rule 16 contemplates that discovery materials should be exchanged privately between the parties and not disclosed publicly.  See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 31-33 (1984) (noting that pretrial civil discovery materials are not traditionally available to the public); United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding the same in the context of criminal discovery); Smith, 985 F. Supp. 2d at 519 (noting that pretrial discovery "is usually conducted in private").  Because the purpose of pretrial discovery is solely to prepare a defense, discovery materials provided by one party or another should not be disseminated before trial to members of the public.  See Anderson, 799 F.2d at 1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."); United States v. McVeigh, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings" and "emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

      For these reasons, courts in this Circuit and others have held that it is appropriate to issue a protective order limiting the dissemination of discovery materials solely to the defendants for their use in preparing a defense for trial.  See, e.g., Seattle Times Co., 467 U.S. at 37 (affirming protective order limiting dissemination of pretrial discovery); United States v.

3

<u>Stewart</u>, 590 F.3d 93, 98-99 (2d Cir. 2009) (same); <u>Anderson</u>, 799 F.2d at 1441 (same); <u>Smith</u>, 985 F. Supp. 2d at 535 (same); <u>United States v. Salemme</u>, 978 F. Supp. 386, 389-90 (D. Mass. 1997) (same).

III.    <u>The Proposed Protective Order</u>

The proposed Protective Order (the "Protective Order") balances the varied privacy and security interests of the government and of uncharged third parties, including victims and potential witnesses, against the defendants' need to investigate the charges against them and to prepare a defense, by restricting the disclosure of discovery to individuals with a specific need to review the discovery to assist the defendants in defending against the charges. The Protective Order permits defense counsel to share discovery materials with defense staff, including non-lawyer personnel, expert witnesses, investigators, and interpreters, and with potential witnesses to prepare them for testimony. The Protective Order also authorizes defense counsel to use and retain the materials, for the defense of their clients, throughout the pendency of this case and sentencing and appeals, if any, after which time the Protective Order requires the discovery materials to be returned to the government.

At the same time, the Protective Order requires defense counsel to ensure that the discovery materials are not disseminated beyond the respective defense teams, including any notes or other material derived from or prepared based upon the discovery materials. Furthermore, the defendants will be barred by the Protective Order from transmitting any of the discovery materials outside of the United States. In the event that this term of the Protective Order, or other terms, pose material difficulties to the defendants in preparing their defenses of this case, nothing in the Protective Order precludes the defendants from seeking to negotiate an accommodation with the government, or seeking relief from the Court if the parties cannot reach an accommodation.

Finally, the Protective Order allows the government to designate particularly sensitive discovery material as "Sensitive Discovery Material," subject to greater restrictions on its use and dissemination, provided that the government has a good faith belief that such heightened protections are warranted. Nothing in the Protective Order prevents the defendants themselves from accessing these materials, so long as they do so in the presence of their counsel or their staff. In the event the defendants or their counsel disagree with the government's designation of materials as "Sensitive Discovery Materials," the Protective Order encourages defense counsel to endeavor to resolve such a dispute with the government. In the event the parties are unable to resolve such an issue, the Protective Order permits defense counsel to challenge "Sensitive Discovery Material" designation by filing a motion with the Court.

IV.    <u>The Defendants Have Consented To The Proposed Protective Order</u>

The government has provided draft copies of the Protective Order to defense counsel for defendants Zheng Congying, Zhu Yong, and Michael McMahon. Each of these defendants and their counsel have indicated their consent to the entry of the Protective Order. The enclosed draft reflects their signatures, and the government's.

V.    <u>Conclusion</u>

Given the sensitive nature of the discovery in this case, the volume of discovery, and the potential harm to the government and to third parties that would result from its disclosure to those without a legitimate need to review the discovery, the government respectfully requests that the Court enter the Protective Order.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By:    /s/ J. Matthew Haggans
Craig R. Heeren
J. Matthew Haggans
Ellen H. Sise
Assistant U.S. Attorneys
(718) 254-7000

Enclosure (Proposed Protective Order)

cc:    Clerk of Court (PKC) (By ECF)
Defense Counsel of Record (By ECF)