

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| CRH/MAA/IC | *271 Cadman Plaza East* |
| F. #2017R00906 | *Brooklyn, New York 11201* |

May 31, 2023

By ECF

The Honorable Pamela K. Chen
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. McMahon, et al.
                  Criminal Docket No. 21-265 (S-1) (PKC)

Dear Judge Chen:

      The government writes in response to the Court's inquiries during the May 30, 2023 pretrial conference regarding the expert testimony of Professor Andrew Wedeman, to clarify the scope of testimony the government seeks to elicit pursuant to Federal Rule of Evidence 702.

    I.    Background

      Professor Andrew Wedeman is a professor of Political Science at Georgia State University, where he is Director of the China Studies program and focuses his academic studies on the domestic politics of the People's Republic of China (the "PRC" or "China"), particularly with respect to corruption. Prior to this appointment, he was a professor of Political Science at the University of Nebraska-Lincoln, where he also served as the Director of the Asian Studies program and the Director of the International Studies program. He has held posts as a visiting Fulbright Research Professor at Taiwan National University, a Visiting Associate Professor of Political Science at the Johns Hopkins-Nanjing Center for Chinese and American Studies, and a Research Professor at Beijing University. He has published extensively about China, including, among other things, three books and numerous peer-reviewed articles in academic journals.

      As disclosed in the government's notice pursuant to Rule 16(a)(1)(G), Professor Wedeman is expected to testify regarding the following topics:

      (a) the structures of the PRC government and of the Chinese Communist Party ("CCP"), including both the relationship between the two and the roles of certain relevant entities (e.g., Ministry of Public Security, Central Commission for Discipline Inspection, National Supervision Commission, Overseas Chinese Affairs Office, United Front Work Department, People's Procuratorate, and People's Court);

(b) certain key officials in the PRC government and their roles, responsibilities, and relationships;

(c) the nature of corruption in the PRC;

(d) the CCP's anti-corruption campaigns, particularly Xi Jinping's anti-corruption campaign announced in 2013;

(e) the PRC's policy objectives (both domestic and foreign) in seeking to repatriate (temporarily or permanently) PRC citizens living abroad; and

(f) the policy initiative referred to by the PRC government as "Operation Fox Hunt" and "Operation Skynet," including its objectives, the roles and responsibilities of relevant PRC government entities (at both the national and local levels), and the ways in which the PRC government seeks to effectuate the initiative.

Professor Wedeman's anticipated testimony will be based upon his education, experience, and training, which are further detailed in his curriculum vitae, which is attached as Exhibit A.

## II. Legal Standard

Under Rule 702(a), an expert witness may testify in the form of an opinion or otherwise if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert's testimony "must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help." Andrews v. Metro North Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989). In making this determination, "[a] trial judge has broad discretion in determining whether to admit expert testimony under Fed. R. Evid. 702, and his decision will be sustained unless manifestly erroneous." United States v. Cruz, 797 F.2d 90, 96 (2d Cir. 1986). "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." Nimely v. City of New York, 414 F.3d 381, 395 (2d Cir. 2005). Under Rule 704, an opinion "is not objectionable because it embraces an ultimate issue," United States v. Lopez, 547 F.3d 364, 373 (2d Cir. 2008), but an expert witness must not "state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," Fed. R. Evid. 704(b).

## III. Argument

The government anticipates Professor Wedeman's testimony will explain relevant parts of the complex nature and structure of the PRC government, as well as PRC government policies relating to anti-corruption activity, including "Operation Fox Hunt" and "Operation Skynet," the objectives of those programs and the ways in which they are carried out, including with respect to the involved government and political entities.

Expert testimony about a foreign country that is relevant to the facts of the case is admissible under Rule 702.  See Gill v. Arab Bank, PLC, 893 F. Supp. 2d 523, 532-34 (E.D.N.Y. 2012) (admitting expert testimony regarding strategies and methods of middle eastern terrorist groups and relationships between these groups, as well as on historical origins and contemporary practice of form of charity used by groups to obtain funding); Niam v. Ashcroft, 354 F.3d 652, 659-60 (7th Cir. 2004) (reversing asylum decision by Board of Immigration Appeals in part for its refusal to consider expertise of witness providing opinion concerning political conditions in foreign country of asylee); cf. United States v. Kampiles, 609 F.2d 1233, 1247 (7th Cir. 1979) (admitting expert testimony regarding Soviet intelligence recruiting practices).

Testimony about tactics and methods of a complex scheme is also permissible.  Indeed, in the Second Circuit, courts "routinely [have] upheld the admission of expert testimony offered by the government to explain the workings of criminal transactions and enterprises—such as narcotics trafficking, organized crime, and money laundering—that, without explanation, would be esoteric or otherwise beyond the understanding of the average juror." United States v. Nektalov, No. 03-CR-828, 2004 WL 1469487, at *2 (S.D.N.Y. June 30, 2004) (collecting cases); see also United States v. Amuso, 21 F.3d 1251, 1263-64 (2d Cir. 1994) (finding no error where expert testimony "overlapped to a degree" and may even have "bolstered" the testimony of other government witnesses, because the testimony established "a broad range of topics," that included "common cosa nostra terminology . . . and the existence and structure of New York crime families—topics we previously have held to be proper subjects of expert opinion.").  Just as "the operational methods of organized crime families are still beyond the knowledge of the average citizen," id. at 1264, so are those of a complex foreign government-directed scheme like Operation Fox Hunt.

In United States v. Abouammo, for example, the defendant, a former employee of Twitter, was charged with acting as an agent of the Kingdom of Saudi Arabia ("KSA") when he passed personal identifying information ("PII") of Saudi dissidents to a KSA government official.  The government proffered an expert to testify about the background and history of KSA, including government officials' use of social media to advance their goals and specifically their targeting and repression of dissidents.  As the government had argued in support of admitting this testimony, the evidence was relevant because it was crucial to helping the jury understand KSA's interests and how and why a foreign government would have recruited the defendant in the alleged scheme.  Such testimony also placed into context the motivation of KSA officials to bribe the defendant to identify and locate certain anonymous dissidents.  Noting that such testimony "should not inappropriately insinuate that [the defendant was] responsible for violence committed by the KSA against other actors," the court allowed some expert testimony concerning these issues, reasoning that "some amount of information regarding the KSA's treatment of critics and efforts to silence dissent is relevant to establishing motive, and as such increases the likelihood that the scheme and conspiracy which the government charges actually occurred." United States v. Abouammo, No. 19-CR-621-EMC (N.D. Cal.), Order at 13-15 (Dkt. No. 290 (July 6, 2022)).  Similarly, in United States v. Al Malik Alshahhi, in which the defendants likewise were charged with acting as agents of a foreign government, the court permitted an expert on the United Arab Emirates ("UAE") and the KSA to testify about, among other things, "the 'authoritarian' nature of the KSA and UAE regimes, " the "relative roles, powers, and responsibilities of key UAE officials with whom the [d]efendants directly interacted as part of the charged conduct," as well as

3

the "significant power of [Mohamed bin Zayed Al Nahyan] and [Mohammed bin Salman Al Saud ("MBS")] in their respective countries and provide context for the exercise of that power." The court concluded that the expert's testimony was "relevant to explaining how defendants may have acted as agents of the UAE and the alleged interrelatedness of the UAE's and KSA's foreign policy interests." See United States v. Al Malik Alshahhi, No. 21-CR-371 (BMC), Order at 5-6 (Dkt. No. 215 (Sept. 13, 2022)); see also Minute Entry Order dated Sept. 21, 2022 (denying further motion to preclude expert and confirming original preliminary ruling). The reasoning of Abouammo and Al Malik Alshahhi apply with equal force here.

Finally, by way of comparison, in forced labor and sex trafficking cases, courts have repeatedly permitted the introduction of expert witnesses to testify about the methods by which the scheme is carried out. See, e.g., United States v. Geddes, 844 F.3d 983, 991 (8th Cir. 2017), (affirming use of an expert witness to testify on "the operation of sex trafficking rings and the terms used therein"); United States v. Brinson, 772 F.3d 1314, 1319 (10th Cir. 2014) (affirming expert testimony on "the meaning of certain terms commonly used in the prostitution trade, such as 'the game,' 'finesse pimp,' 'gorilla pimp,' 'escort,' and 'throw-aways'"; "the relationship between pimps and their prostitutes"; "how pimps recruit prostitutes"; "how pimps and prostitutes use cellphones"; and "how pimps control prostitutes"); United States v. Farrell, 563 F.3d 364, 377 (8th Cir. 2009) (holding that expert testimony regarding "warning signs" that indicate a victim is working due to a climate of fear was admissible and "relevant insofar as it provided this broader context for the jury to understand the workers' actions, to understand the conditions in which they may have labored, and to assess the truthfulness of their allegations," but finding error because the expert opined on the strength of the case); United States v. Alzanki, 54 F.3d 994, 1006 (1st Cir. 1994) (affirming expert testimony on victim responses to abuse, including failure to escape, was "'reasonably likely' to assist the jury in understanding and assessing the evidence, in that the matter at issue was highly material, somewhat technical, and beyond the realm of acquired knowledge normally possessed by lay jurors"). Here too, the methods by which the Chinese government carries out Operation Fox Hunt is likely to assist the jury in understanding and assessing the evidence—particularly as that evidence makes more likely that certain conduct occurred at the direction of the Chinese government.

4

IV.	Conclusion

For the foregoing reasons, the government respectfully requests that the Court permit the government to introduce the above-described expert testimony.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:   /s/
        Craig R. Heeren
        Meredith A. Arfa
        Irisa Chen
        Assistant U.S. Attorneys
        (718) 254-7000

        MATTHEW G. OLSEN
        Assistant Attorney General
        Department of Justice
        National Security Division

By:   /s/
        Christine Bonomo
        Trial Attorney

cc:	Clerk of the Court (by ECF and email)
	Counsel of Record (by email)