1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        : 21-CR-265(PKC)
                                 :
                                 :
        -against-                : United States Courthouse
                                 : Brooklyn, New York
                                 :
YONG ZHU,                        : Tuesday, July 11, 2023
                                 : 10:00 a.m.
            Defendant.           :
                                 :
- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR HEARING
BEFORE THE HONORABLE PAMELA K. CHEN
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    BREON S. PEACE, UNITED STATES ATTORNEY
                       EASTERN DISTRICT OF NEW YORK
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                       BY:  MEREDITH ARFA
                            IRISA CHEN
                            CRAIG HEEREN
                            Assistants United States Attorney

                       DEPARTMENT OF JUSTICE
                       NATIONAL SECURITY DIVISION
                           950 Pennsylvania Avenue NW
                           Washington   , DC 20530
                       BY:  CHRISTINE A. BONOMO, Trial Attorney


For the Defendant:    KEVIN KERVENG TUNG, PC
                          136-20 38th Avenue - Suite 13D
                          Flushing, New York 11354
                      BY:  KEVIN K. TUNG, ESQ.


Court Reporter:       LINDA A. MARINO, OFFICIAL COURT REPORTER
                      225 Cadman Plaza East/Brooklyn, NY 11201
                      lindacsr@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

*Proceedings* 2

1          MS. CALLIE:  Criminal cause for hearing, Docket

2     No. 21-CR-00265, USA v. Zhu.

3          THE COURTROOM DEPUTY:  Will the parties please state

4     their appearances for the record, starting with the

5     Government?

6          MR. HEEREN:  Good morning, your Honor.  Craig Heeren

7     on behalf of the United States.  With me are my colleagues

8     Meredith Arfa --

9          MS. ARFA:  Good morning, your Honor.

10          MR. HEEREN:  -- Irisa Chen, Trial Attorney Christine

11     Bonomo from National Security Division, and our paralegal Mary

12     Clare.

13          THE COURT:  Good morning to all of you.

14          MR. TUNG:  Kevin Tung on behalf of the Defendant,

15     Yong Zhu, at this moment.

16          THE COURT:  Good morning to you, Mr. Tung.

17          And to you, Mr. Zhu.

18          Let's have our interpreters state their names for

19     the record and be sworn in.

20          (Interpreters sworn.)

21          THE COURTROOM DEPUTY:  Please state your names for

22     the record and indicate the language you're interpreting.

23          INTERPRETER LU:  Lisa Lu, L-I-S-A L-U, Mandarin

24     interpreter.

25          Good morning, your Honor.

*Proceedings*                                                    3

1          THE COURT:  Good morning, Ms. Lu.

2          INTERPRETER MOY:  Way Moy; W-A-Y, last name M-O-Y,

3    in Mandarin.

4          THE COURT:  Good morning, Mr. Moy.

5          So, we're here on the ineffective assistance of

6    counsel claim of Mr. Zhu, submitted by letter dated June 27,

7    2023, and it was docketed as No. 270 in the case.

8          The letter apparently was written in Chinese

9    originally and then translated by someone.  And, so, the

10   translation accompanied the original Chinese letter, so I have

11   both before me and I've reviewed the English translation of

12   the letter.

13         I wanted to address you, Mr. Zhu, as well as

14   Mr. Tung, because of the unusual posture of this claim being

15   made.

16         As everyone knows, trial ended a little over a month

17   ago, I believe, and we're in the midst of post-trial briefing

18   on Rule 29 and 33 motions by all three defendants.

19   Essentially, those motions seek to vacate the verdict or

20   overturn the verdict or, in the alternative, get a new trial

21   for each of the defendants.

22         So, that makes this claim a little bit complicated

23   procedurally to deal with.  So, what I wanted to do was to be

24   able to speak directly to Mr. Zhu, with the assistance of a

25   translator, to explain why I am not going to address this

*Proceedings*                                                          4

1   ineffective assistance claim now and that the better recourse,

2   I believe, or rather better course, I should say, to pursue or

3   to proceed on is to have Mr. Zhu, should he wish to pursue

4   this claim, to do so post-judgment, assuming that the

5   conviction is affirmed or not vacated and that we proceed to

6   sentencing.  And this is what's referred to as proceeding

7   collaterally on a claim of ineffective assistance.

8            Let me note that I have considered the decision in

9   *United States v. Brown* by the Supreme Court, where the Supreme

10  Court held that one way to proceed on an ineffective

11  assistance of counsel claim made prior to sentencing is to

12  essentially treat it as a motion for a new trial under

13  Rule 33.  And *Brown* is reported at -- I'm sorry, not Supreme

14  Court, Second Circuit, I apologize, Second Circuit decision.

15  It's reported at 623 F. 3d 104, and that's a decision from

16  2010.

17           However, there was a post-*Brown* decision that I

18  think is applicable here and it is a helpful guide for me, and

19  that's the case of *U.S. v. Fleurimont,* reported at 401 Fed.

20  App. 580.  And that's a Second Circuit decision from 2010, but

21  it does postdate *Brown*.

22           And there, the Second Circuit recognized that it

23  would not be error to deny an ineffective assistance claim

24  made prior to sentencing where adjudicating that claim would

25  cause unnecessary hardship, delay, and expense.

1         And that's the situation I find here.  Because if I

2    were to entertain this claim now and allow Mr. Zhu to pursue

3    it at this moment, what I would have to do is relieve

4    Mr. Tung, appoint new counsel for Mr. Zhu, allow there to be

5    briefing about the ineffective assistance claim which would

6    prevent and derail, in effect, the resolution of the Rule 29

7    and 33 motions, and would also delay or prevent sentence in

8    this matter even as to the other two defendants, along with

9    Mr. Zhu.

10        And the reason is because there is a common

11   conspiracy claim as to all the defendants or two common

12   conspiracy claims as to all defendants that are necessarily

13   implicated by any Rule 29 and 33 briefing, and then the delay

14   would effect, I think, the resolution of those claims as well.

15        Admittedly, I've considered bifurcating the

16   defendants, separating Mr. Zhu from the other two defendants,

17   but I think that would be highly inefficient under the

18   circumstances.

19        And furthermore, it would also require me to make

20   some kind of finding at this point that there's a basis to

21   replace Mr. Tung as Mr. Zhu's trial counsel.  And on that, I

22   want to put on the record that I'm not able, based on the

23   record before me at trial, to find that Mr. Tung was

24   ineffective at least with respect to his performance at trial.

25        I know that Mr. Zhu's ineffective assistance claim

*Proceedings*                                                        6

1    goes beyond simply what happened at trial, but I don't have

2    the ability at this point to judge that aspect or those

3    aspects of his ineffective assistance claim because I don't

4    have before me a complete factual record, one that would

5    necessarily have to be developed through a hearing, likely an

6    evidentiary hearing, or at least submissions of affidavits.

7            And I do want to note on the record why I find or

8    why I cannot find at least at this point that Mr. Tung was

9    ineffective at the trial.

10           First of all, Mr. Tung did file a suppression motion

11   seeking to preclude admission of Mr. Zhu's post-arrest

12   statement in full.  Mr. Tung did make the argument, which I

13   think had potential merit and was not a weak argument in any

14   way, that Mr. Zhu attempted to invoke his right to counsel

15   before the interview started but was -- and this is the

16   argument -- was ignored by the agents.

17           While I ruled against the Defendant on that

18   argument, it was by no means without some merit based on the

19   videotaped interview that I saw.

20           Secondly, at trial, even though part of the

21   statement was admitted by my ruling and upon the motion of the

22   Government, Mr. Tung successfully argued for the inclusion of

23   an additional statement at that interview by Mr. Zhu that

24   contradicted the portion that the Government relied upon or at

25   least could be seen as contradicting the statement that the

*Proceedings*                                                      7

1   Government relied upon.  And obviously, that was a reasonable

2   trial strategy and an appropriate one under the circumstances

3   and helped to blunt the force or impact of the post-arrest

4   statement or the inculpatory part of the post-arrest statement

5   by Mr. Zhu.

6           Third, I noted that Mr. Tung did make reasonable

7   arguments during summations in light of the evidence that was

8   presented at trial and that he sought to argue against the

9   inference that Mr. Zhu actually knew he was working for

10  officials of the Chinese government.  And I remember that

11  Mr. Tung very vigorously argued that Mr. Zhu, along with the

12  other defendants, were actually the victims of a plot by the

13  Chinese government to get unwitting individuals in the United

14  States to help them in their campaign of repatriation of

15  purported criminals sought by the Chinese Government.

16          And then lastly, Mr. Tung did put on a witness, so

17  actually put on a case, for Mr. Zhu by calling the attorney

18  Lina Xu, and I think her last name might have been spelled

19  X-U, to confirm or corroborate the defense's argument in

20  theory that Mr. Zhu went to this attorney, Ms. Xu, who then

21  made the contact with Mr. McMahon, the co-defendant --

22          Something wrong there, Mr. Heeren?

23          MR. HEEREN:  Sorry, your Honor.  The individual who

24  was called, the attorney's name Shi Li Ping, S-H-I L-I

25  P-I-N-G.

*Proceedings* 8

1          Lina Xu was the translator in the case.

2          THE COURT:  Thank you very much.  So, the attorney

3    who Mr. Zhu saw or consulted with who then actually made the

4    contact with Mr. McMahon, the detective or former detective

5    hired by the other individuals that Mr. Zhu was in contact

6    with.

7          So, I cannot find, as I said before, that Mr. Tung

8    was ineffective on the record before me.

9          The last thing I should note is during trial, there

10   was a sidebar after an outburst by Mr. Zhu in which he did

11   complain about certain things that were happening during the

12   trial.  I conferred with Mr. Zhu and Mr. Tung at sidebar, and

13   during that sidebar Mr. Zhu confirmed explicitly that he

14   wanted Mr. Tung to continue as his lawyer during the trial and

15   that the two had spoken and resolved whatever dispute had

16   arisen and that had prompted Mr. Zhu's outburst.

17         So, based on all of those indicators, again, I

18   cannot at this point find ineffective assistance by Mr. Tung

19   at the trial.

20         That being said, and as I said before, Mr. Zhu's

21   complaints about Mr. Tung's representation go beyond simply

22   what happened at trial and relate to matters and issues

23   pretrial; namely, discussions about the plea offer made by the

24   Government in August of 2021 -- and this is based on the

25   letter I got from Mr. Zhu -- the trial preparation itself, the

*Proceedings*                                                    9

1    sharing of discovery with Mr. Zhu.  Mr. Zhu claims that he

2    only saw the discovery or the evidence at trial for the first

3    time.  Those are things that I cannot rule upon or take into

4    account because I don't have an evidentiary record before me,

5    I only have Mr. Zhu's representations at this moment.

6              Those could, obviously, effect the trial strategy

7    employed or the performance Mr. Tung gave during the trial.

8    And ultimately, it may be that post-judgment the record shows

9    that there were some genuine inadequacies in Mr. Tung's

10   performance at trial, but, again, I cannot make that finding

11   at this point, which I would need to do in order to replace

12   Mr. Tung and continue with the proceedings relating to the

13   trial, specifically the post-trial briefing relating to the

14   trial.

15             So, because of the inability to proceed without

16   Mr. Tung's continued participation, I'm not going to rule on

17   the ineffective assistance of counsel claim at this moment.

18   That does not bar Mr. Zhu from raising it collaterally or

19   post-judgment, which is typically the way these types of

20   claims are raised.

21             I want to further note that part of the reason I

22   cannot make a finding about ineffectiveness based on the

23   record before me at trial is there is a very high standard

24   that applies under *Strickland*.  And the question is, can I

25   find that Mr. Tung's performance and the trial strategy that

*Proceedings*                                                          10

1  he appears to have employed was objectively unreasonable?

2          And I cannot make that finding based on everything I

3  have before me at this point, including, as I said before, the

4  decision to move to suppress Mr. Zhu's post-arrest statement

5  and all of the other things I mentioned.

6          So, the way we're going to proceed is to allow

7  Mr. Tung to continue to represent Mr. Zhu in the post-trial

8  briefing and then we will proceed to sentencing, assuming, and

9  only if, I don't grant any of the motions for any of the

10  defendants and in particular Mr. Zhu.

11          And then, Mr. Zhu, you certainly can raise

12  post-judgment, assuming that the verdicts stand and that you

13  are sentenced, all of these issues, all of your complaints

14  about what happened pretrial with respect to your

15  representation by Mr. Zhu and during the trial, and then, of

16  course, even post-trial in terms of the briefing if you think

17  that that also is inadequate.  You can raise all those issues

18  then in the form of an appeal or more likely a habeas

19  petition.

20          Mr. Tung, you look like you want to say something.

21          MR. TUNG:  Yes, your Honor, can I be heard?

22          THE COURT:  Yes.

23          MR. TUNG:  Shall I stand?

24          THE COURT:  Why don't you sit and use the

25  microphone?

*Proceedings* 11

1        And then we're going to switch interpreters, so

2   pause for a moment.

3        MR. TUNG:  Sure.

4        Your Honor, first of all, when I receive a copy of

5   this letter from Mr. Yong Zhu to the Court, I was very, very

6   surprised and I feel very disappointed.  For this case, I did

7   a lot of work, I did --

8        THE COURT:  Hang on a second.

9        Mr. Moy, you have to translate -- oh, you're having

10  trouble with the device.

11       INTERPRETER MOY:  Yes, it's not working.

12       (Pause in proceedings.)

13       INTERPRETER MOY:  My apologies to the Court.

14       THE COURT:  Mr. Moy, let us know when the device is

15  working.

16       INTERPRETER MOY:  Mr. Zhu is requesting Mr. Tung to

17  start all over again.

18       THE COURT:  Mr. Tung, before you start over again,

19  let me just caution you.  I don't want you to reveal any

20  attorney-client privileged communications.  If you want to,

21  then we should sidebar for that purpose with Mr. Zhu or I

22  might ask the Government -- well, actually, we'll have to

23  sidebar because we do have an audience.  So, just be mindful

24  of that.

25       Mr. Zhu, similar for you, you have the right to

*Proceedings*                                                    12

1   maintain the confidentiality of any of your communications

2   with Mr. Tung at this point.  So, if you want to raise

3   anything that happened or transpired between the two of you,

4   let me know, and we'll convene a sidebar, a private sidebar.

5               Go ahead, Mr. Tung.

6               MR. TUNG:  Your Honor, yes, I understood clearly.

7   That's why I'm not going to reveal any information that I

8   consider to be covered by attorney-client privilege.

9               THE COURT:  Okay.

10              MR. TUNG:  However, the point I try to bring to the

11  Court's attention here is because a working relationship

12  between me --

13              THE COURT:  Hang on.

14              Mr. Moy, is the translation device working?

15              (Pause in proceedings.)

16              THE COURT:  Mr. Moy, can you tell me what you're

17  explaining to the Defendant?

18              INTERPRETER MOY:  What happened, Mr. Zhu insisted on

19  Mr. Tung start again, so I just repeat what Mr. Tung has just

20  said, which was that Mr. Tung would not reveal in open court

21  anything between him and his client, that it would be

22  privileged.

23              THE COURT:  Okay.

24              MR. TUNG:  Your Honor --

25              THE COURT:  Mr. Tung, stop.

*Proceedings*                                                    13

1       Mr. Zhu, just listen to the translator, who is going

2   to translate every word that's being said by everyone in the

3   court in English.  So, you're not going to miss anything.

4   Just listen to the translator.

5       Go ahead, Mr. Tung.

6       MR. TUNG:  Your Honor, the reason I want to say

7   something is because at this moment of time, it cannot

8   possibly for me to continue to represent the Defendant.

9   Anything I do from now on, it will be some basis for Mr. Zhu

10  to file complaint against me for inassistance of counsel.

11      THE COURT:  Ineffective assistance of counsel.

12      MR. TUNG:  I'm sorry, ineffective assistance of

13  counsel.  I'm so -- the reason I don't say it, I feel so bad

14  about this.

15      So, I cannot really, honestly, to continue to

16  effectively represent this defendant.  The working

17  relationship between us has broken.  He didn't talk to me.  He

18  didn't even give me any alert before he filed this letter.

19      Now, your Honor, I know this is actually the

20  strategy.  He owes a lot of legal fees and he wanted to get

21  out of to pay me legal fees.

22      THE COURT:  Well, I can't accept any representation

23  about what Mr. Zhu's motivations are and it's not particularly

24  relevant to me at this point.  I have to try to get the

25  criminal proceeding completed and move forward.

*Proceedings*                                                    14

1          Now, it sounds like you're saying you want to

2   withdraw as his attorney.  And my concern is that that will

3   derail the post-trial briefing process because you would have

4   to be replaced by brand new counsel -- I presume maybe

5   court-appointed counsel based on statements about Mr. Zhu's

6   financial wherewithal at the moment -- but that lawyer

7   wouldn't have sat through the trial, doesn't know anything

8   about the case, and would have to start from square one.  And

9   it would be impossible for another attorney to come in and

10  effectively represent Mr. Zhu.

11         Now, I've essentially said I cannot find you were

12  ineffective during the trial.  There's no reason for me to

13  believe you would be ineffective in briefing the trial that

14  you prepared for and defended Mr. Zhu in.  So, from my

15  perspective, I need you to finish this process.

16         And, yes, Mr. Zhu is likely to raise again his

17  ineffective assistance of counsel claim.  That is his right.

18  But it's a necessary part of this process.

19         The question is, why do you think you cannot be

20  effective in briefing a Rule 29 and 33 motion?

21         MR. TUNG:  Your Honor, obviously, there is a

22  disagreement as to almost everything, the strategy, what you

23  can say in the brief.  So, if I do not go with his ways, it

24  will be blamed on later for ineffective assistance of counsel.

25  So, your Honor, I am in a no-win situation.

*Proceedings*                                                        15

1          Your Honor, I will work with the newly appointed

2    counsel by the Court.  I will provide all my records, all the

3    transcripts, everything to him, and I will be discussing with

4    the newly appointed counsel.

5          But for me to continue to represent this Defendant,

6    it is entirely inappropriate.  There's no working relationship

7    between us anymore.

8          Your Honor, this letter, you can ask Mr. Zhu who

9    actually prepared for him.  I guess or I suspect it is from

10   his son.  He has been interfering in the entire process during

11   the trial.  He asked me --

12          THE COURT:  I don't really want to go down this

13   road.

14          MR. TUNG:  He's not a client.  I just wanted to

15   point it out to Court.

16          THE COURT:  Let me just deal with the practicalities

17   here because the motions are due in two weeks, on July 20.

18          So the proposal appears to be by Mr. Tung for him to

19   withdraw and for CJA counsel to be appointed, with whom

20   Mr. Tung will work to help prepare the Rule 29 and 33 motions.

21          But there's no question that the schedule will have

22   to be extended and I would extend it for all.

23          What's the Government's view on this?

24          MR. HEEREN:  So, as an initial matter, I believe the

25   Court already adjourned -- I don't know if you set a new date,

*Proceedings*                                                    16

1    but had adjourned Mr. Zhu's response time in light of these

2    issues.  So, I think we're already at a position where we may

3    be moving things a little bit anyway.

4          The Government has no objection to a reasonable

5    extension of time, but we agree with the Court that sort of

6    the process that I think is starting to be envisioned here

7    would unduly delay, would create a much more extensive delay

8    than I think what the Court and what the Government would

9    contemplate.

10         It's one thing to extend it a few more weeks given

11   this sort of issue to be hashed out so counsel can focus back

12   on the issues at trial, it's another thing entirely to derail

13   the whole process while we figure out new counsel.

14         I would point the Court in the same vein of

15   ineffective assistance claims to a case *United States v.*

16   *Ashburn*, A-S-H-B-U-R-N, 2015 Westlaw 2179794.  In that case,

17   Judge Garaufis similarly ruled that an ineffective assistance

18   claim should wait until collateral -- post-judgment

19   proceedings and similarly denied a motion for withdrawal by

20   CJA counsel, predicated largely on the same arguments the

21   Court just made.

22              THE COURT:  While post-trial motions were pending.

23              MR. HEEREN:  Correct, prejudgment, post-trial.

24              THE COURT:  Right.

25              MR. HEEREN:  I don't need to rehash what the Court

*Proceedings* 17

1    said.  I think what the Court said is right.  There is no

2    reason to believe Mr. Tung will be ineffective based on the

3    record that was developed at Court.  Obviously, Mr. Zhu

4    retains the right to say what he may say on appeal, but that

5    alone is not an appropriate basis for withdrawal or for the

6    motion to be filed now.

7           And similar to what Judge Garaufis did, I think it

8    would be appropriate to find that relieving counsel, similar

9    to proceeding on the ineffective assistance claim, would pose

10   unnecessary hardship to both defendant and co-defendants,

11   delay, and expense.

12          THE COURT:  I think that is correct and I agree with

13   Judge Garaufis' approach because, as I said before, I don't

14   have any reason to believe, Mr. Tung, that you will not be

15   able to effectively put together the Rule 29 and 33 motion.

16          The issues are quite explicitly drawn.  The test is

17   whether or not the evidence was sufficient to prove all the

18   elements of the crime, the crimes of which he was convicted.

19   You know better than anyone how to make that motion, having

20   obviously defended Mr. Zhu through the case and knowing the

21   evidence as you do.

22          So, it would be extraordinarily disruptive to this

23   process and highly inefficient for me to substitute another

24   attorney.  Even if you help them, there's virtually no way for

25   that person to do a better job or to do it in a timely

*Proceedings*                                                    18

1    fashion.  And I would be putting someone else, another

2    attorney, I think in a very difficult and compromising

3    position by substituting them in the midst of post-trial

4    briefing.

5             There's no way to prevent Mr. Zhu from eventually

6    alleging ineffective assistance.  But if you properly do the

7    briefing, as I think you can do, the argument will fail.

8             The question really for me in terms of his

9    ineffective assistance claim is going to be or I think the

10   focus will likely be on what happened before the trial

11   started.  And that history is already written and there's no

12   one doing it.

13            So, at this point, I'm not going to let you withdraw

14   because of the effect it would have on this case and

15   proceeding to reaching finality.

16            MR. TUNG:  Your Honor, there is a great possibility

17   that motion will be denied.  So, there will be another for

18   Mr. Zhu to blame me for; that I didn't do a good job, I should

19   have done a much better job.

20            THE COURT:  Mr. Tung, I can't protect lawyers from

21   claims by their disgruntled clients or their unhappy clients

22   that they didn't do a good job.  If you do your job as you

23   think is appropriate, then all will be well.  But if I

24   entertained every concern a lawyer had about being accused of

25   not doing a good enough job, that would cause our system to

*Proceedings*                                                    19

1   grind to a halt.

2          Now, let me just say this:  My only concern is that

3   you're expressing, your telling me, that your relationship

4   with Mr. Zhu has irrevocably broken down.  That, I think, is

5   certainly buttressed by Mr. Zhu's filing of this letter.  But

6   I don't actually think for purposes of filing this motion that

7   that level of communication is as essential as it is, for

8   example, in deciding how to proceed, whether to go to trial or

9   to plead guilty, or how to proceed in trial.

10          Again, this is a very discreet task which has to do

11  with reviewing the trial record and making appropriate

12  arguments about the sufficiency or lack of sufficiency or

13  inadequacy of the evidence put forth, something that lawyers

14  are equipped to do and doesn't require the same kind of or the

15  same level of input from a client.

16          MR. TUNG:  Your Honor, I agree with you.

17          I would like your Honor to tell Mr. Zhu that I will

18  prepare this motion based on the records, based on the

19  evidence presented during the trial, and I do not want to

20  specifically speaking with his family members.  They have no

21  business in pushing me to one way or the other to prepare this

22  motion.

23          Or your Honor, if this is not true, I cannot be

24  listening to other people, even family members, to push me.

25  If they do, your Honor, I cannot focus on preparing this

*Proceedings*                                                    20

1   motion effectively.  Because they do not know the laws.

2           THE COURT:  Mr. Tung, I have a simple prescriptive:

3   Just ignore them.

4           And I can't get in the middle of your relationship

5   between you or Mr. Zhu or the family members, but, obviously,

6   you've made it clear on the record you are not going to take

7   advice, counsel, or interference, accept any interference from

8   Mr. Zhu's family members.  That's fine.

9           Just dispatch your duty as you're supposed to,

10  complete the motion, and we'll proceed accordingly after that.

11          MR. TUNG:  Your Honor, then another question is

12  let's say the motion is denied partially or maybe fully denied

13  and then we'll have to move on to stage of sentencing.

14          At that point in time, your Honor, can you replace

15  me with a new attorney to argue sentencing?

16          I just cannot do this anymore, your Honor.  I'm also

17  a person.  Yes, I'm attorney.  I'm also a person, a person, a

18  live person.

19          THE COURT:  All right, well, that is potentially one

20  course of action.  Sentencing is in many ways a distinct

21  endeavor and I think a new attorney could step in and

22  effectively represent Mr. Zhu for sentencing purposes.  And,

23  obviously, they'll have available to them the entire trial and

24  post-trial record.

25          I don't know if the Government has a view on that.

*Proceedings*                                             21

1  It's unusual but not unheard of for there to be change of

2  counsel before sentencing.  And it is certainly one way, at

3  least, to minimize the extent of any post-judgment proceedings

4  regarding ineffective assistance of Mr. Tung.

5              Mr. Heeren, I don't know if you want to be heard at

6  all on that issue at this point.

7              MR. HEEREN:  I think, your Honor, I think any

8  decision on that is best left until after the Court -- if

9  we're going to get to sentencing, after the Court rules on

10 Rule 29, Rule 33.

11             I would just note that if -- I agree with the

12 Court's sense that it's distinct, but it will cause some delay

13 still, some significant delay.  But I think it's best left to

14 consider that after the Rule 29, Rule 33 motions.

15             MR. TUNG:  Lastly, your Honor --

16             THE COURT:  So it's clear, Mr. Tung, I'm not going

17 to make a decision about that yet.  And I do agree with the

18 Government at least that it's wiser to wait to see what

19 happens first and see if I have to deal with that issue.  In

20 any event, I can't rule on that at the moment.

21             Go ahead.

22             MR. TUNG:  Lastly, your Honor, because after we

23 receive your order, our office is suspended time and it spent

24 time working on that motion for that period of time.  So, your

25 Honor, two weeks -- additional two weeks from the original

*Proceedings*                                                    22

1  deadline, let us to make it up; otherwise, it will be

2  something not very well written, prepared, so that it will

3  subject us to another claim for ineffective assistance of

4  counsel.

5          THE COURT:  I think, and I have to go back and look

6  at the docket, but I may have already granted more time for

7  Mr. Zhu's motion because of what's been happening.

8          Can someone check the docket?  Did we extend it for

9  everyone?

10          Right now, we did stay the filing of the motion

11  pending the resolution of this representation issue.

12          So, you want two weeks beyond July 20; is that

13  right, Mr. Tung?

14          MR. TUNG:  Yes, your Honor.

15          THE COURT:  That seems certainly appropriate under

16  the circumstances.

17          MR. HEEREN:  Your Honor, we have no objection to

18  that.

19          One thing we would propose considering is whether we

20  extend everybody's so that we're on the same timetable.  My

21  only hesitation is, obviously, other defense counsel isn't

22  here so I don't know what their position would be.  I can't

23  imagine they'd have any issue with it and I suppose the Court

24  can just do it.

25          THE COURT:  Or they can submit their motions early,

*Proceedings* 23

1    but I'm not sure anyone will do that.

2          So, yes, I'm going to extend the time for all

3    Defendants.  Obviously, if someone has a complaint from the

4    other defense camps, they can let me know.  They won't be shy,

5    I'm sure.  But I, too, don't see they'll complain about having

6    two more weeks other than the fact it delays the ultimate

7    conclusion, but, obviously, more time to try to argue against

8    the verdicts is going to be viewed as positive, I'm sure.

9          The new deadline for everyone's motions is?

10         THE COURTROOM DEPUTY:  August 3.

11         THE COURT:  August 3.

12         And then how much time had I given the Government

13   originally?

14         MR. HEEREN:  You had given the Government 60 days,

15   your Honor.

16         THE COURT:  Do you still need 60, you think?

17         That's long.

18         MR. HEEREN:  I think so, your Honor, just because it

19   was a pretty voluminous trial record.

20         THE COURT:  Sixty days, Fida.

21         THE COURTROOM DEPUTY:  September 28.

22         THE COURT:  And then I think I've given the defense

23   three weeks for replies; is that right?

24         THE COURTROOM DEPUTY:  Is it two weeks or three

25   weeks?

*Proceedings*                                                    24

1          THE COURT:  I think for some reason I had given one

2     extra week, but I don't remember.

3          THE COURTROOM DEPUTY:  October 16.

4          THE COURT:  Now Mr. Zhu, I don't want to keep you

5     from saying anything if you want to, but I really caution you

6     against getting into the specifics of your claim at this

7     point.  I want to assure you that you will have an opportunity

8     after we complete the trial-related process and after

9     sentencing, if any, to raise your claims again.

10         Do you understand what I've said so far?

11         THE DEFENDANT:  I don't quite understand.

12         THE COURT:  What I want you to understand is that

13    you've raised your claim regarding your dissatisfaction with

14    Mr. Tung's representation of you while we're still in the

15    middle of finalizing the process we've started.  So, there are

16    motions that are pending that Mr. Tung is in the best position

17    to represent you on at this moment.

18         If I were to replace Mr. Tung, the proceedings would

19    be delayed for months.  And that wouldn't, I don't think, best

20    serve your interest because I still couldn't address some of

21    the claims you make about the ineffectiveness, some of which

22    relate to what happened before trial.  Or if I did, it would

23    just take a long time and you would be in this Limbo for a

24    very long time, with the possible result that you would get a

25    new trial at best and you would then end up having to do

*Proceedings*                                                    25

1    another trial potentially or restart your criminal process.

2            For your sake as well as the other two defendants,

3    whose interests I have to consider, it makes more sense to

4    finish the process we've started, see if there's any merit to

5    the motions to vacate the convictions of you and the other

6    defendants and, if not, proceed to sentencing, at which point

7    you can then raise all of the ineffective assistance claims

8    you're raising with me now and they can be fully explored.

9            That's how many Courts have proceeded in a situation

10   such as this.  It's not typical for a defendant to raise an

11   ineffective assistance claim as soon as the verdict comes

12   down.  Most defendants wait until the process is fully

13   completed and, in part, so they can raise all of their

14   complaints at the same time about the lawyer's performance.

15           I'm not saying what you did was inappropriate in any

16   way.  And it does happen.  But judges have some discretion on

17   how to deal with it in light of the bigger picture, in light

18   of the interest in this case of two other defendants whose

19   convictions are still pending also and who aren't making the

20   same claims as you.

21           If I let you proceed with your ineffective

22   assistance claim, it would almost certainly delay the

23   resolution of their criminal cases.  And they have a very

24   strong interest in trying to get to the conclusion of their

25   cases alongside yours because many of the claims are common or

*Proceedings*                                                    26

1    many of the crimes alleged are common to all of you.

2              So, the takeaway for you should be that you're not

3    being deprived of your right or denied the right to make your

4    ineffective assistance claims, I'm just finding that now is

5    not the time for me to address them.  And for your sake as

6    well as the interests of the other defendants, I'm choosing to

7    proceed to finish the criminal process that started with the

8    trial, in effect, and resulted in convictions and which I need

9    to complete before addressing your broader claims of

10   ineffective assistance.

11             Partly I say that because you are alleging that

12   Mr. Tung didn't adequately advise you about the plea offer in

13   this case.  That certainly could have the effect of undoing

14   the conviction, assuming that it still stands.  But it's an

15   issue that really goes back in time and requires fact finding

16   which will take time.  And I want to give it a serious look

17   and serious consideration.

18             So, I don't want there to be this time pressure

19   which exists right now because we're in the middle of

20   finishing the process we started once the trial began.  But I

21   can assure you that I will give full consideration to any

22   claim you make, just not now.

23             Do you understand what I'm saying?

24             THE DEFENDANT:  All right.

25             THE COURT:  Now, my having said that, is there

*Proceedings*                                                    27

1   anything you want to say?

2          And, again, I caution you against getting into the

3   merits of any of your complaint right now.

4          THE DEFENDANT:  It's matter that the whole case my

5   attorney has not expressed clearly --

6          THE COURTROOM DEPUTY:  Mr. Moy --

7          THE COURT:  Mr. Moy, you have to use the microphone.

8          Start again, Mr. Moy.

9          Hold on, Mr. Tung.

10         THE DEFENDANT:  It's that my attorney has not

11  expressed fully, completely about my case.

12         THE COURT:  I understand that you feel that from the

13  beginning Mr. Tung didn't sufficiently advise you about the

14  nature of your case, the potential consequences, the evidence

15  or discovery that the Government had provided relating to the

16  case.  I understand that that's your claim.

17         Mr. Tung, you don't need to defend against it now.

18         So, I understand, Mr. Zhu, you're going back even

19  before the trial.  And that claim can be fully explored and

20  can be the subject of a hearing, but just not now.

21         Do you understand that?

22         THE DEFENDANT:  But I did not have the opportunity

23  to express...

24         THE COURT:  You will, just not now.

25         MR. TUNG:  Your Honor --

*Proceedings*                                                    28

1          THE COURT:  Hold on.  He's still translating.

2          Mr. Zhu, understand that I'm just not letting you

3    express or explain or go into any more detail now.

4          THE DEFENDANT:  No, I'm innocent.  It's that all

5    these people who, you know, cut parts of the videotape and put

6    it together and put this piece here, this piece there, and to

7    present it as evidence.

8          THE COURT:  But that's the subject of the motions

9    that are being briefed right now.  You just need to let

10   Mr. Tung finish the process.

11         I understand that you're dissatisfied with him right

12   now, but because replacing him at this point will only delay

13   the conclusion of this trial and you could well end up still

14   being convicted but four months from now, rather than getting

15   to some answer to that question soon --

16         MR. TUNG:  Your Honor --

17         THE COURT:  Mr. Tung, you have to let him finish

18   translating.

19         Are you done, Mr. Moy?

20         INTERPRETER MOY:  Yes.

21         THE COURT:  Go ahead.

22         MR. TUNG:  Your Honor, I think at this moment in

23   time, even though I'm not going to be relieved, I think, your

24   Honor, I beg you to appoint a public defender to work with me

25   so Mr. Zhu can express his concerns through that attorney and

*Proceedings*                                                      29

1    let that attorney to have a second opinion to work with me on

2    how to prepare the motion.  Otherwise, your Honor, this is not

3    going to work.

4            He already said he distrusts me.  There's no way --

5    there's nothing I can do to relieve his feeling to make him

6    feel comfortable to work with me.  So your Honor, it's

7    really -- I mean, I'm not delaying the process, all I'm asking

8    you appoint a second counsel so Mr. Zhu can communicate with

9    him and then -- and both of us can discuss.

10           So, otherwise, whatever I said will not be good for

11   him.  This is not going to work, your Honor.  I'm not going to

12   be relieved, I know that.  So, I will be working on motion to

13   finish it, but let him to have a second opinion.  But he

14   couldn't afford a private counselor, and he indicated, which

15   might be true because he owe me over $10,000 legal fees at

16   this point in time.

17           So, your Honor, I think you appoint a second counsel

18   so he might have a second opinion.  I'm not holding other

19   counsel liable for the motion, but all I'm saying with both

20   counsel, maybe I can handle this difficult client.

21           THE COURT:  Let's take a ten-minute break.  I want

22   to consider this proposal.

23           And I'll hear from the Government when we get back.

24   Let's break until 11:15.

25           (Recess taken.)

*Proceedings*                                                    30

1          THE COURT:  Have a seat, everyone.

2          I've given this some thought, the current proposal

3    having a CJA attorney or Federal Defender, if they're not

4    conflicted, appointed to assist with the motion briefing.

5          Let me just say by way of preamble, perhaps,

6    Mr. Tung, since I'm not letting you withdraw, you are still

7    Mr. Zhu's attorney and you have an ethical obligation to

8    communicate with him as best as possible.  You can't simply

9    give up or throw up your hands and say, "I'm not going to try

10   because he's difficult."  So, I just want to make that clear.

11         Mr. Zhu, by the same token, you have to communicate

12   with your lawyer or else you cannot complain later that they

13   did not do what you wanted them to do.  You can't simply say,

14   "I don't like my lawyer, I don't agree with his advice;

15   therefore, I'm not going to speak to him."  That's not going

16   to allow you later to complain that somehow he was ineffective

17   because he didn't do what you wanted him to do or was

18   objectively unreasonable in how he proceeded.

19         That being said, I do want to enable Mr. Zhu and

20   you, Mr. Tung, to be able to put forth the best motion that

21   you can.  If it would facilitate that, I will appoint CJA or

22   Federal Defender counsel.

23         Are the Federal Defenders conflicted in this case?

24         Because I think all three defendants came in with

25   paid representation, right?

*Proceedings*                                                    31

1           MR. HEEREN:  They did.

2           One of the defendants who pled guilty had a Federal

3   Defender in California, not here.  I just don't recall if any

4   of the Federal Defenders here had any contact on this case, so

5   I can't say for certain.

6           THE COURT:  And I wonder what their conflict rule

7   is.

8           MR. HEEREN:  I don't know.

9           THE COURT:  Perhaps the safer course is simply then

10  to appoint a CJA attorney.

11          Now, we have determined that today's duty CJA

12  counsel is conflicted and tomorrow's is as well, I think.

13          Fida, is that right?

14          THE COURTROOM DEPUTY:  Eric Franz?

15          MR. HEEREN:  No.

16          THE COURT:  Eric Franz, we'll notify him that he

17  needs to assist Mr. Tung.

18          You know what?  Let me not actually make that

19  decision yet.  Let me think about who might be best suited to

20  assist with this particular situation and task, which is

21  obviously focused on a written submission and reviewing the

22  trial record.  Some lawyers I think are more suited to that

23  than others or might have the time right now to do that.

24          So, let me explore who might be appropriate CJA

25  counsel.  We'll appoint them by tomorrow once we search.

*Proceedings*                                                    32

1      MR. TUNG:  Yes, your Honor.

2           I will still be the main writer to finish the draft.

3      So, during that process -- it will take another two weeks at

4      least.  So, during that process, whoever the new attorney is

5      appointed -- not new attorney, the second attorney appointed

6      will have a chance to catch up.

7           THE COURT:  Bear in mind, Mr. Tung, one problem with

8      this notion you have that that second attorney might be a

9      go-between for you and Mr. Zhu is that I don't think or I

10     don't know of any CJA attorneys who are fluent in Mandarin.

11     So, that may present some issue.

12          Like I said, you still have an ethical duty to

13     communicate with your client and make the effort to

14     communicate.

15          And again, I'm going to remind you, Mr. Zhu, that if

16     you want to have the motion be as good as possible, you need

17     to communicate with Mr. Tung and the second attorney that I

18     will assign to assist with putting together the motion.  I

19     don't think I'll find someone who speaks Mandarin, so Mr. Tung

20     may still have to be your main point of contact.

21          MR. TUNG:  Yes, your Honor, I will continue to -- I

22     will prepare the motion to draft and I will call Mr. Zhu into

23     my office and explain it to him, what my strategy is, why I'm

24     picking up those facts; if he has anything to add or if he has

25     any other ideas, he can talk to me.

*Proceedings*                                                    33

1      But one thing that I will not talk to his family

2 members because they are disturbance.  They're only creating

3 more problems for me to continue to work on this case

4 effectively.

5          THE COURT:  Obviously, that's something you and

6 Mr. Zhu should work out.  And as I said before, you can simply

7 ignore those other family members.

8          THE DEFENDANT:  Your Honor, with your permission.

9          I haven't seen Mr. Tung ever since the end of the

10 case.  I have never had telephone calls with him after the

11 verdict.

12         MR. TUNG:  You had a telephone conversation with my

13 law clerk Mr. Tung, correct?

14         THE COURT:  Mr. Tung, I don't want you directing any

15 questions to Mr. Zhu.

16         The bottom line is there is a task at hand.  It

17 needs to be completed within the next four weeks.  Mr. Tung

18 will communicate with you as necessary to write the brief --

19 the motion, rather, that he needs to write.

20         But you should call his office, insist that he speak

21 to you to the extent you need to talk about something.  But

22 remember that the immediate responsibility he has and that you

23 should talk to him about is filing this motion which asks for

24 the guilty verdict to be overturned based on the insufficiency

25 of the evidence.  And that's the argument, obviously.

*Proceedings*                                                    34

1      So, that's all you need to focus on right now with

2  respect to you and Mr. Tung.

3      Mr. Tung, obviously, I think you ought to talk to

4  Mr. Zhu sooner rather than later just to try to clear the air

5  and confirm that the two of you need to work together, or at

6  least you need to consult with him to the extent necessary on

7  this motion.

8      MR. TUNG:  And he's free to take my prepared draft

9  to go to the Government-appointed attorney for advice and for

10  consultation.  I have no objection at this point in time.  I

11  will take whoever's advice is free.  I cannot really...

12      THE COURT:  Mr. Tung, I don't want you to

13  communicate to your client through this process.  You need to

14  communicate with him directly.  But I accept your

15  representation that you'll work with the second counsel and

16  take whatever advice or consultation that person has to give

17  about how to prepare the motion once that second lawyer has

18  had a chance to review the record.

19      MR. TUNG:  Thank you, your Honor.  I really

20  appreciate it.

21      THE COURT:  So, that concludes the proceeding unless

22  the Government wants to say anything else.

23      MR. HEEREN:  Very briefly, your Honor.  I'm sorry.

24      This is a sort of unusual situation, obviously.  One

25  sort of procedural wrinkle is that Mr. Tung is obviously

1   retained.  I think the best way to craft this, I would

2   propose, is at trial and today there's been some indication

3   that Mr. Zhu can no longer afford to pay Mr. Tung.  And he

4   already submitted a financial affidavit on that score that I

5   think the Court can rely on.  So, I think the way that might

6   make most sense is to convert Mr. Tung to CJA counsel and then

7   the second counsel can be appointed and that should streamline

8   everything.

9           THE COURT:  That's good.  The problem is it's not

10  proper because Mr. Tung is not part of the CJA panel.  So, he

11  will remain in his status, but I can certainly find that

12  Mr. Tung qualifies for CJA counsel and appoints someone based

13  on the financial affidavit.

14          So, I do appreciate you mentioning what is

15  essentially an administrative housekeeping matter.

16          Mr. Tung, you remain retained counsel because I

17  can't appoint you because you're not on our CJA panel.

18          MR. TUNG:  Understood.

19          THE COURT:  Whatever your payment arrangement with

20  Mr. Zhu is up to you two to resolve, but I will appoint CJA

21  counsel to assist.

22          MR. TUNG:  Thank you, your Honor.

23          MR. HEEREN:  Nothing else.

24          THE COURT:  Thank you very much, everyone.

25          (Matter concluded.)