UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
   UNITED STATES OF AMERICA

                                  Plaintiff,

     -against-

   YONG ZHU,

                                  Defendant.

------------------------------------------------------------------x

21 Cr. 265 (PKC)

**Post-Trial Motion**

Yong Zhu, by and through his undersigned counsel, respectfully moves for a judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29 and 33.

## PRELIMINARY STATEMENT

Mr. Zhu has told the Court that he wanted to plead guilty and accept responsibility for failing to register before acting at the behest of a police officer from the country where he was born. Having nonetheless proceeded to trial, he was entitled to a fair one. But codefendant's counsel's closing arguments infused racial animus and xenophobia into the proceeding, depriving Mr. Zhu of a fair trial and requiring a new one under Rule 33. Moreover, because this case was tried, it was the government's burden to provide sufficient evidence as to each element of each offense. It was unable to do so for the two stalking counts, and Counts Three and Four should be dismissed under Rule 29.

## FACTUAL BACKGROUND

Mr. Zhu is a 64-year-old lawful permanent resident of the United States who immigrated here from China over three decades ago. He was convicted this past June of conspiring to act as an agent of a foreign government without prior notification to the attorney general; acting as an agent of a foreign government without prior notification to the attorney general; conspiring to engage interstate stalking; and stalking. *Id*.

During summation, codefendant McMahon's lawyer repeatedly argued that the United States government should have kept his client – the lone white and lone native-born American on trial – safe from China and, by implication, the other defendants including Mr. Zhu. These comments transformed McMahon's counsel into a second prosecutor against Mr. Zhu and, however unintentionally, injected racial animus and xenophobia into the proceeding.

Further, concerning the two stalking counts, the prosecution has not provided any direct evidence to demonstrate that Mr. Zhu possessed the intent to harass or intimidate the victims, nor that he shared this intent with any other defendants. Nor has it provided evidence that he reasonably foresaw or did in fact cause substantial emotional distress. The burden of proof rests on the prosecution, and in the light of these deficiencies, they have failed to establish guilt beyond a reasonable doubt.

For the foregoing reasons, we respectfully request that the Court grant Mr. Zhu a new trial or, in the alternative, enter a judgement of acquittal on Counts Three and Four.

## LEGAL ARGUMENT

**I.   A new trial should be granted because remarks during summation improperly injected racial animus and xenophobia into the proceeding and transformed codefendant's counsel into a second prosecutor.**

During his summation, counsel for Mr. McMahon repeatedly stated that the United States government should have protected his client from the Chinese defendants. T. 2046-47. This line of argument transformed the codefendant into a second prosecutor and warrants a new trial for Mr. Zhu on that basis. Further, however unintentionally, the remarks injected xenophobia and racial animus into the proceedings that can only be cured through a new trial.

**A.   Factual Background**

At the end of his summation, Mr. McMahon's counsel turned into a prosecutor against the Chinese codefendants, telling the jury that the evidence against them had demonstrated that the Chinese government had acted in an unlawful and abhorrent matter: "I really understand why the government wishes to protect this family from the People's Republic of China. I really do. The evidence in this case does show just how far China is willing to go to repatriate those who they wish to prosecute . . . ."

Counsel then portrayed Mr. McMahon as a victim of "the People's Republic of China" and, by implication, the codefendants: "Did they [apparently referring to federal authorities] ever reach out to Mike to warn him that he too was being lied to and manipulated by the Chinese?" Counsel asked. T. 2045-47. The government objected and the Court sustained, warning counsel to be "careful." T. 2046.

Shortly thereafter, Mr. McMahon's counsel again portrayed Mr. McMahon as a victim and the Court overruled the objection. *Id.* When Mr. McMahon counsel again blamed "the Government" for failing to "protect" Mr. McMahon from the Chinese, the Court *sua sponte* sustained, adding, "I did warn you. Please." T. 2047.

The government and the Court (*sua sponte*) having objected at various times to this line of argument, Mr. Zhu's counsel did not separately enter what would have been a superfluous objection.

### B.  Applicable Law

"Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1309, 1413 (2d Cir. 1992). A Rule 33 motion is appropriate in "the most extraordinary cases," *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001); *United States v. Goklu*, 2023 WL 184254, at *4 (E.D.N.Y. Jan. 13, 2023) (same) (Chen, J.), like the instant one in which racial animus and xenophobia was injected via a closing argument.

In general, "a motion for a new trial 'should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)). In making this determination, the court "is not required to view the evidence in the light most favorable to the government," *United States v. Lopac*, 411 F. Supp. 2d 350, 359 (S.D.N.Y. 2006), but instead must "examine the entire case, take into account all facts and circumstances, and

4

make an objective evaluation[,]" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). Ultimately, the court should order a new trial under Rule 33 if "it would be a manifest injustice to let the guilty verdict stand." *Sanchez*, 969 F.2d at 1414.

When the government's closing arguments cause a defendant substantial prejudice, the Court should reverse the defendant's conviction and grant a new trial. *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990); *United States v. Drummond*, 481 F.2d 62 (2d Cir. 1973). In considering whether an argument creates substantial prejudice, the Court can examine several factors, including the severity of the misconduct; the measures adopted to cure the misconduct; and the strength of the government's case apart from the misconduct. *United States v. Milar*, 79 F.3d 338 (2d Cir. 1996); *United States v. Modica*, 663 F.2d at 1181. Although this case does not involve misconduct by a prosecutor during summation – and instead is based on a codefendant's counsel's line of argument – these same factors would appear to apply.

### C. Discussion

McMahon's Counsel's summation remarks warrant a new trial for Mr. Zhu for two separate and independent reasons. First, they transformed Mr. McMahon's counsel into a second prosecutor, buttressing the government's case and adding an additional party attacking and trying to convict Mr. Zhu. *United States v. Salameh*, 152 F.3d 88, 116-17 (2d Cir. 1998) (severance may be required where "acceptance of one party's defense would tend to preclude the acquittal of [the] other."). Nor was there a limiting instruction to diminish the prejudice of the codefendant acting as a prosecutor. *See United*

5

*States v. O'Connor*, 650 F.3d 839, 858 (2d Cir. 2011) ("The possibility that codefendants may mount mutually antagonistic defenses is not itself a ground for severance where the risk of prejudice can be offset by less drastic measures . . . such as limiting instructions"). For this reason alone – McMahon's counsel's transformation into a second prosecutor against the Chinese defendants – warrants a new trial for Mr. Zhu.

Second, and separately, counsel's remarks, however unintentionally and regardless of their actual intent, had the effect of inviting the jury to consider xenophobic and racist ideas when it deliberated. The Court did not provide a limiting instruction to minimize this harm. And none would have been effective to minimize the substantial prejudice of the invitation to consider xenophobic and racist ideas when deliberating; counsel's remarks portrayed the "Chinese" government as evil and implied that the "Chinese" defendants had taken advantage of Mr. McMahon, an innocent white man who was caught up in the "Chinese" treachery. Counsel's comments – repeated several times over objection – "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168 181 (1986); *Cf. Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017) (petitioner entitled to trial free from racial bias by jurors).

## II.    Counts Three and Four are not supported by sufficient evidence.

### A. Applicable Law

The standard for granting a motion for acquittal under Federal Rule of Criminal Procedure 29 is whether, after viewing the evidence in the light most favorable to the

6

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Interstate stalking requires proof that the defendant, in the course of traveling in interstate commerce with intent to harass or intimidate, caused or attempted to cause, or reasonably expected to cause, "substantial emotional distress." 18 U.S.C.A. § 2261A.

"We review de novo challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility.'" *United States v. Zhong*, 26 F.4th 536, 559 (2d Cir. 2022) (quoting *United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010)). We "must affirm the conviction so long as, from the inferences reasonably drawn, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Connolly*, 24 F.4th 821, 832 (2d Cir. 2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

**B.  Analysis**

There is no evidence that Mr. Zhu caused or reasonably expected to cause "substantial" emotional distress. To prove this element, the government relied on the following brief testimony:

Witness: He said – when my father returned to China, they sent my younger sister to the jail again.

    Question: And does that make you feel frightened?

    Answer: Yes, I am worried.

7

*See* T. 1960. "Yes, I am worried" – those mere four words do not establish *substantial* emotional distress.

Moreover, there is no evidence that Mr. Zhu personally intended or reasonably expected to cause substantial emotion distress, much less that he agreed to do so. During the trial, not a single victim or witness testified that he or she positively recognized Mr. Zhu appearing at his or her residence in Short Hills, New Jersey or Warren, New Jersey, because no evidence showing that Mr. Zhu had travelled from New York to New Jersey to conduct interstate stalking and to participate in any surveillance activities at the target houses. The government, bereft of such evidence, instead focused on irrelevant facts that do not prove the requisite intent and knowledge. In particular, the government argued to the jury that Mr. Zhu went to the victim's home in Short Hills, New Jersey, "two years" after he hired McMahon. T. 2116. But the record established that after the codefendant McMahon located the victim Xu Jin's residence at Warren, New Jersey, the Short Hills's location was no longer a place of interest for the Chinese government or anyone. Nothing in the record established that Mr. Zhu's visit to Short Hills location two years after victim Xu Jin's residence in Warren had been identified would be calculated to cause victim emotional distress.  The government's argument in the closing that Mr. Zhu went to Short Hills two years later was for the purpose to make sure that Xu Jin's sister was still living there by taking a picture of her car with license plate so that the Chinese government could send harassing mails to Xu Jin's sister at Short Hills address. Government's argument supported Mr. Zhu's position that he went to Short Hills two years later was not

8

for the purpose to commit an interstate stalking, but to collect information about Xu Jin's sister's address.

The government also argued that he provided information to *McMahon* – a private investigator – about the victim's parents. T. 1956. It does not allege that he contacted the victims directly or instructed McMahon to do so. The evidence clearly demonstrated that after Mr. Zhu introduced McMahon to the Chinese official on October 27, 2016 at the Panera Bread Restaurant in New Jersey, the date the three men had a picture taken together (Government Exhibit 0902F), Mr. Zhu was dropped or eliminated by the Chinese government official from further participation in the circle. This position can be corroborated with government's evidence (Government Exhibits 0315, 0316, and 0317), Phone Summary Charts. In Government Exhibit 0316, Voice Calls Summary Chart, after October 28, 2016 toward the end of December 31, 2016, Mr. Zhu did not receive or call anyone in the circle. In Government Exhibit 0317, Voice Calls Summary Chart, April 5, 2017 through April 12, 2017, Mr. Zhu did not participate any telephone calls among the circle. The fact that Mr. Zhu went to Short Hills two years later further proves that Mr. Zhu was kept out of the circle. His knowledge about Xu Jin's address was out of date. No one in the circle updated Mr. Zhu with Xu Jin's new address in Warren, New Jersey.

This is not sufficient evidence to create even a possible inference that Mr. Zhu acted with knowledge that his actions would cause substantial emotional distress. To be sufficient, it is not enough that evidence merely permit the inference sought by the government. *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019). The evidence must instead be sufficient to establish the element beyond a reasonable doubt. *Id.* There is

9

no such evidence to prove beyond a reasonable doubt that Mr. Zhu either acted with intent to harass or annoy, actually caused substantial emotion distress, or reasonably foresaw that he would cause such harm. As a result, Counts Three and Four must be dismissed.

### III. Count I Should Be Dismissed Because of Lack of Supporting Evidence

Mr. Zhu was convicted for Court I, Conspiracy to Act as an Agent of a Foreign Government Without Prior Notification to the Attorney General. Said conviction cannot be sustained because of lacking of evidence on the second element that the Defendant Zhu knowingly and intentionally becomes a member of the conspiracy.

The second element requires that the Government prove beyond a reasonable doubt that the Defendant Zhu knowingly and intentionally became a member of the charged conspiracy. The evidence shown above demonstrated that on or after October 28, 2016 Mr. Zhu was dropped or eliminated from the circle by the Chinese officials. Mr. Zhu was cut off his involvement whatsoever from the group. In another words, Mr. Zhu was never considered by the Chinese officials that he was or should be part of the group to accomplish their common goal to locate the fugitive for the Chinese government.

Government's Exhibit "316" and "317" Telephone Traffic Charts presented compelling evidence that highlights the diminishing role of Mr. Zhu as the Middleman following the meeting between the Chinese contact Eric Yan and the private investigator Michael McMahon on October 17, 2016. The charts demonstrated that the frequency of phone calls involving Zhu significantly decreased, with only sporadic communication occurring once per month after October 17, 2016. Notably, the telephone traffic chart for

2017 reveals a complete absence of calls made or received by Zhu from his Chinese contact or Private Investigator. It is crucial to note that there is no record indicating any form of compensation received by Zhu for his services in locating the private investigator from his Chinese contact. The only remuneration Zhu received pertained to his transportation services, specifically as a driver for his Chinese contact Eric Yan in New Jersey. This compensation amounted to a total of three days of work, equating to $600. These facts clearly indicate that Mr. Zhu was never considered as an integral part of their alleged plan or scheme for the so-called Operation Fox Hunt program. Mr. Zhu was just the person who introduced his Chinese contacts to the private investigator he found through the attorney Liping Shi for the Chinese contact. Nothing more! Mr. Zhu never knowingly and intentionally became a member of the charged conspiracy.  Even if he wanted to be the member, the evidence established that the Chinese Officials did not want him to be part of their circle or group.

In addition, the government has failed to demonstrate during the trial that Mr. Zhu knowingly acted as an agent of a foreign government. It is crucial to highlight that Mr. McMahon's initial awareness of the target being a most wanted individual by the Chinese government only occurred when Mr. McMahon received the Comprehensive Report on October 5, 2016. (Government Exhibit 4012) Notably, the government presented no evidence indicating that Mr. Zhu was informed of the Chinese Official's instructions to locate the target through his communications with his Chinese contact. Furthermore, there is a lack of evidence demonstrating that the translator, Emily Hsu, relayed Mr. McMahon's discovery regarding the target being a most wanted individual by the Interpol to Yong Zhu.

It is important to remember that Mr. Zhu does not speak fluent English, thus preventing direct communication with Mr. McMahon. These factors underscore the absence of Mr. Zhu's knowledge regarding the full scope of Mr. McMahon's and the Chinese government's doings.

Moreover, Government Exhibit 807F-4 contains the communications between witness Jin Hongru and Feng Zhu, also known as Johnny Zhu. Before Defendant Jin Hongru began working for the Chinese government official, he testified during the trial that he was explicitly informed by Feng Zhu that he would be working for the Chinese government and must follow their instructions. On the other hand, the government presented no similar evidence demonstrating that Mr. Zhu received clear instructions from his Chinese contact, Hu Ji, stating that Mr. Zhu would be working for the Chinese government and must follow their directives. Moreover, the promised compensation of $1,800, as shown in Exhibit 812C, further supports the notion that Mr. Zhu was under the impression that he was involved in a private debt collection matter, rather than a governmental operation. Therefore, the above fact further supports Mr. Zhu's argument that the Government failed to prove the second element beyond a reasonable doubt that the Mr. Zhu knowingly and intentionally became a member of the charged conspiracy.

## CONCLUSION

For the reasons stated in Point I, Mr. Zhu should be granted a new trial on all counts that survive a Rule 29 motion. For the reasons stated in Point II, Counts Three and Four should be dismissed pursuant to Rule 29. For the reasons stated in Point III, Count One should be dismissed pursuant to Rule 29.

Dated: New York, New York
      August 9, 2023

Respectfully submitted,

/s/
Kevin Tung
Benjamin Silverman
*Attorneys for Yong Zhu*